Case 13-3570, Jeffrey Mayle, et al. v. Jerry Maloon, et al. Oral argument, 15 minutes per side. Mr. Davis-Williams for the appellants. You may proceed. Please the court. My name is Rafael Davis-Williams. I am representing Jeff Mayle, Mildred Cowell, and the estate of Jay Young on appeal out of the Southern District of Ohio. I would like to reserve three minutes of my time. Sure. Thank you. Your honors, this is a fact-intensive case that spans several years, several entities and agencies, and several individuals. But at the heart of this case is whether the state of Ohio conspired to seize my client's gaming machines, assets, and records in order to carry out the governor and the attorney general's attempt at that point to, quote, crack down on gambling and to put my clients out of business. And the core question here is whether the state deliberately attempted to do an end run around the multiple court orders that clearly prohibited the state from seizing any of these machines. Well, I mean, I don't know if that's an accurate characterization, because the courts in those other cases didn't have jurisdiction over the area that was the subject of the search. Isn't that true? No, your honor, that's not true. Oh, really? No, that's not true. I thought it was some neighboring district or something. No, your honor. The nature of the case is that the injunctions that had been put in place initially began in 2006 with Judge Holbrook enjoining the Department of Public Safety, the state arm. Is that the stipulated order you're talking about? I mean, one of these orders was just stipulated. Right. That was the initial ex parte. Yes. That's the one you're talking about now? That was the November 2006. How could they enjoin the state if some local village just stipulates some order that isn't even reasoned or anything? Well, that, in fact, that goes to the argument is that Judge Holbrook at that point said to maintain the status quo. Not to seize the machines until it was determined whether or not the machines were illegal gambling devices. That was the initial order, and that order did apply. That order in the record goes to the Department of Public Safety. It's a come and please court. There is nothing in the record that says that temporary restraining order was vacated, was dismissed, was modified, and it was put in place until further notice. Did this search occur within the geographic jurisdiction of this Court of Common Claims? That particular order did not. I mean, I'm sorry. That particular, the order put in place at that point was strictly for that village. So the no, the search did not occur in that Court of Common Claims? Well, Your Honor. Is no the correct answer? No is the correct answer. However, it's more complicated than that because that is exactly what the core of this case is about, whether or not this was a state-involved agency task force or whether these were local law enforcement entities that were carrying out the efforts of this particular task force. And that is critical. I mean, Court of Common Claims somewhere can't enjoin the state from doing things outside of that court's own jurisdiction. Isn't that true? We can't enjoin the United States from doing something in California, right? That's very true, Your Honor. But I think that that's a misunderstanding of the record because what was happening was this state-involved task force, and that's where the lower court came. I believe that's the error of the lower court as well, is this was a state agency. I mean, this was a state task force that had brought together several local agencies. So that first TRO was for the fraternal order in the village, a village of Pomeroy. That issue was there. However, there were— Restricted them in that village. I'm sorry? Restricted them in that village, period. Yes, Your Honor. That initial TRO prevented the state law enforcement officers from seizing the machines in that village. Subsequent to that order, however, there were two additional orders that did enjoin the Department of Public Safety. And those orders were in place, and again, none of those orders were ever vacated or modified. Now, the state is going to argue that it was based strictly on the emergency rule that the Attorney General put in place at that time. But Judge Reese modified, in his August 2007 order, modified his order and says, The plaintiff and the Ohio Department of Public Safety are currently involved in an action before another branch of this court concerning the same Tic-Tac-Fruit machines and whether they are, in fact, skill-based or chance-based amusement machines. And that action and this action should be considered together on their merits prior to further acts by the state of Ohio. And that's a pretty clear order from a Common Pleas Court judge that enjoined this task force, this alleged task force that was trying to have dual operating. But it's not a statement that this game is lawful. No, sir. In fact, to date... The court's totally agnostic on that. To date, there still hasn't been a determination. So then, why was it incumbent, as a constitutional requirement of some court, for the affhanter, whomever puts this in front of the judge who gives the search warrant, to say, Hey, Judge, there's this case over here. Didn't say anything about the merits of this, but you ought to know about it. Excellent question, Your Honor. The reason that's important is because the OOCIC task force basically purported to be, it was a state task force, but they went before Judge Taylor as individual law enforcement agents because of the fact that they knew they were subject to the very TROs that we're discussing now. The state was aware that they were enjoined from taking these machines. It's in the record. Jerry Malone says, Physical seizure of these machines would have to be led by local law enforcement due to what happened in court. Is that what happened? I mean, did local folks take the machines? Yes, Your Honor. So then, problem solved, isn't it? No, Your Honor, because they did it under the auspices of the state. They were not local law enforcement agents. They weren't acting as local law enforcement agents. They were acting under the guise of the state task force, and the state had been enjoined from taking these machines. So to do an end run around the injunctions that barred the state from seizing these machines, they went before the judge, and that is exactly the core of this. That's a material issue. That's something that a jury should make the determination about whether or not that judge deserved to know that there were other injunctions in place. Is that a jury question or is that a legal question as to whether they should have advised the judge issuing the warrant that there was all this other stuff floating around in this court system? Well, Your Honor, the jury question comes in whether or not the judge should have had that information. So it may be a question of law whether or not probable cause was there, but whether or not the information the judge had to make that decision is a jury. That's why we're here because the question comes back, well, if this is a state agent, if this is a state task force, and the state task force is operating under the guise of the state of Ohio, and the state of Ohio has been enjoined from seizing these machines. That's what you're saying. The question of fact is whether it's a state task force or a local? Yes, Your Honor. That's one of the issues. That's one of the issues that the lower court was never reached. Whether or not it's an issue of fact, whether or not this was a state task force, or whether these individuals were operating as local law enforcement. Because what they did was went before the judge as local law enforcement agents and never mentioned the fact that they were part of this larger state task force. They didn't mention they were part of the larger state task force because they knew if they told the judge that, then there was a likelihood that the judge would want to know there are other injunctions out there barring the state from doing exactly what they were asking this judge to give them. Are you arguing it's exclusive? You're either part of the state or you're part of the local? You can't be both? No, Your Honor. You could absolutely be both. But again, that goes to the fact that the issuing judge didn't have that information to make that, to determine. If the information had been presented to her, she then has the option at that point to say, yes, this is a state task force using local law enforcement agents, but I believe either these local law enforcement agents are the driving force behind this. That would be her subjective belief. Yes, sure. That could be her subjective belief. Is that how we look at this for constitutional violations? Sure. Subjectively or objectively? I think objectively is the standard that the lower court mentioned. What we are arguing is that, objectively, any judge would want to have before them as they're weighing whether or not to issue a warrant, information that another court had enjoined the very machines and the very individuals that were before that court from doing exactly what they were asking that court to do. Are you admitting that there was probable cause to issue the warrant? You're just saying that they should have added more stuff in there. I'm absolutely not admitting that there was probable cause, not under any circumstances, because we believe probable cause is – there is no probable cause if there is an injunction barring the seizure of the machines. Probable cause goes away, but without having the knowledge that there are injunctions in place that would bar the seizure of the machines, the judge can't make that determination. And, in fact, that's why we're here, because the judge was not given that information. She then did issue the warrant. And then after the fact, when she learned that there were these injunctions in place, there's no way she would have disturbed the ruling of another judge at that time. That sounds like subjective criteria instead of objective, the way you're saying it. The idea being, however, Your Honor, if any objective judge would want before them all the information necessary to make a decision on whether or not there was probable cause for the issuance of the warrant. And that's – the issue here is whether or not these individuals went before this judge. By not telling the judge one way or the other, that's a violation of the Fourth Amendment? The violation of the Fourth Amendment came because the seizures occurred with injunctions in place, and the judge had no knowledge of that. That is absolutely a violation of the – Is there a best case on that that says that? Yasser and Richardson, which are both cited in our case briefs. Beyond those issues, in my very short amount of time, beyond those issues also is whether or not the Attorney General was involved in the drafting of the warrant. While we never claimed that they actually – that he actually sat at the terminal and drafted warrants, he definitely said to those who were drafting the warrants not to include the information about these injunctions because we are aware that they bar the state. And since we're the state, we can't let the judge know that we are barred from seizing these machines. All right. Very well. Thank you. We'll hear from the state. Thank you, Your Honors. And may it please the Court, Rich Coglianese for the defendants. With me at council table is Aaron Butcher-Lydon. Your Honors, I just want to start actually by raising a threshold issue. Namely, the plaintiffs in this case never argued to this court that failure to disclose being part of the Organized Crime Commission, being part of the state to the judge, was one of the material omissions. They did raise that in the trial court, but that is nowhere to be found in their briefs. There's a reason, Your Honors, why the local law enforcement agencies, the Franklin County Sheriff's Department, Columbus Police Department, could not tell Judge Taylor in Franklin County Muni Court, the judge in the Delaware County Muni Court, or the judge in the Stark County Muni Court whether they were part of an Organized Crime Commission because under Ohio law, that is actually confidential. The Commission's members, the Commission's work, is not allowed to be broadcast publicly. They cannot go into court and say, we're part of an Organized Crime Task Force, we're investigating this, and that's the hat we're wearing here. Courts, I mean, take things under seal all the time. They do. But in this case, and the testimony in the record is clear, that Lisa Smith from the Columbus Police Department and Dave Hunt from the Franklin County Sheriff's Department understood that when they were going into court, they were going into court as members of their local jurisdictions. They were not going into court as members of the state of Ohio. They were going into court as Columbus Police and the Franklin County Sheriff's Department. It seems like a premise of the plaintiff's argument here is that the actions of the state officials here were, in fact, in violation of these prior orders in other courts. Do you agree with that? I disagree with that, Your Honor, and the District Court disagreed with that. There were several orders that are at play, and I'd like to kind of just briefly run through all of them. The first one was Judge Crow down in the Village of Pomeroy case, which was the agreed order that somebody filed a lawsuit against a small village down on the Ohio River, said, give us a declaration that these machines are illegal. The case was never actually contested. The plaintiff's attorney prepared the order. The judge signed it. That order was later vacated. We get to the Franklin County case. That order applied to whom? It applied in Miggs County, and specifically, actually, the challenge was against the Village of Pomeroy, which is a tiny village on the Ohio River. Was it against their local police? It was brought against, Your Honor, it was brought against the village itself, so yes, I would maintain that only that local police department would be subject to it. The next case was brought in Franklin County Common Police Court against the Department of Public Safety. And so Your Honors are aware, public safety has a branch, and one of the branches of public safety is the investigative unit. And basically what they do is they regulate alcohol sales in the state of Ohio. They investigate potential crimes that occur in bars, such as gambling. A declaratory judgment was brought against them, asking that the court find that these Tic Tac Fruit machines were legal under Ohio law. That was the injunction that the Franklin County Common Police Court said. It did not get into the question of whether or not the machines were legal. What it said was that the Department of Public Safety should not seize those machines. That judge later said that that order also applies to the Ohio Attorney General's office. We then get into other cases. For example, the Summit County case, which was a criminal case, where the judge actually ended up going ahead and examining the statute and wrote a rather long and detailed opinion, finding that the defendants were not only not guilty, but finding that those machines in that case were legal under the Ohio laws at the time. Nothing was done in that county as it relates to this case with seizure machines. We move forward. We have a Franklin County judge examining the question, finding that the machines were illegal under Ohio law. That decision was vacated by an appeals court in the state of Ohio on jurisdictional grounds. We then move forward to an administrative rule that the Attorney General issued under his authority under the state's Consumer Sales Practices Act. And the Attorney General, on the permission of the governor, who has to give permission to any state official to issue an emergency rule, went ahead and said, defined what the machines were, limited the cash payout, and said that any violation of this is a violation of the state Consumer Sales Practices Act. The Franklin County Common Pleas Court enjoined the Attorney General's emergency rule on statutory basis, saying that the Attorney General, under Ohio law, did not have the authority to legislatively determine these issues. So they enjoined the order. However, the Attorney General, when he issued the order, sent his Consumer Sales Practices Act order to local law enforcement with advice that they are allowed to take the machines. Because the court found that the Attorney General had no legal authority under Ohio law to issue that rule, the court also ordered the Attorney General to advise those police forces that he said could seize the machines under his civil rule not to proceed. He did that. What the courts in these cases, though, consistently have said is that they are not making a determination with the exception of two cases. The Summit County case, finding that the machines were legal under Ohio law, and the one Franklin County case, finding that the machines were illegal under Ohio law. Those courts never really addressed the issue, are these games of skill or are these games of chance? If they're games of skill, they're legal. If they're games of chance, they're illegal. In fact, the judge in Franklin County that issued a status quo order said specifically that he was reserving ruling on the question of the legality of those machines for another day. So when we look at all of that, the question is, is it reasonable when a police officer is going in front of a magistrate, one of three different counties, the only magistrate that's testified in this case, saying, I'm not telling the magistrate about these other rulings. What counties were the warrants issued out of, which courts? They were issued out of three municipal courts. The Franklin County Municipal Court, the Delaware County Municipal Court, which Delaware was the home of two of the plaintiffs, and then the Stark County Municipal Court, which was the home of the third plaintiff. The business locations and the bank records were kept in Franklin County. Franklin is the only one that had any kind of a prior court proceeding at all. The other two did not. The other two, as far as I know, Your Honor, did not have any prior court proceedings with either these machines or with these defendants. I don't recall from the briefs. Whatever happened with all this, just out of curiosity? I mean, this almost sounds like we're here to, you know, this is like the case, the prosecution itself of this stuff. What happened, Your Honor, is charges actually were never filed in this underlying case. Are these games still going on in Buckeye Tavern or wherever it is? Your Honor, I don't know if the Buckeye Room is still opened or not, but being a member of the Ohio Attorney General's Office for the 17 years I've been there, I can tell you that electronic gaming machines are always a priority of the Attorney General. You don't know if these games are still operating? There are some games, I believe, that may still be operating. The General Assembly just recently passed yet another law attempting to make these types of games illegal. There is currently an action pending in the Franklin County Common Pleas Court because charitable organizations like the Veterans of Foreign Wars have certain types of machines in their locations. And there are limits on payouts and everything else, but in that Franklin County case that is currently pending, the judge did allow the games that are in those charitable lodges to continue to be played until a potential, I believe, June trial. Yeah, I was just curious. Yeah, we've been dealing with these games, Your Honor, for years and years. I gather. And, you know, as Lisa Smith's supervisor testified, and it's in the record, that's part of the problem is that once you find a certain software version to be illegal, the manufacturers simply tweak the software and you start back at ground zero, which is why the General Assembly had tried to do things like put limits on the amount of prize money that one can win when playing the machines. But when we focus on the issuing magistrate in Franklin County, you know, it is our position, and we believe that the district court got this right, that one has to look at an objective and not a subjective standard. As I've mentioned, search warrants were issued in three counties. Franklin County, which was the location where the business was located and the location of where the bank records were located, Delaware County, where two of the plaintiffs resided, and Stark County, where a third plaintiff resided. If the constitutional tested issue is a subjective standard, not an objective standard, it would cause tremendous problems for law enforcement personnel for courts going forward. It's not subjective. I mean, I think everyone agrees on that. It's not a Judge Taylor test. And, Your Honor, with that said, we would submit that the district court properly found that an objective judge in the position of Judge Taylor or the other judges in this case would not need the material that was claimed to be omitted in order to reach a probable cause determination. The district court laid out why all of the material at issue is irrelevant to a probable cause determination. It doesn't matter. Those injunctions don't matter. They were not applicable in this case. They were not applicable to the law enforcement agencies. And even if they were, there is nothing that would prohibit an independent criminal investigation from moving forward. As we mentioned in our brief, that would be similar to somebody having currency engraving plates and simply saying to the Department of Treasury, Secret Service, you can't seize those plates because we're going forward and we're trying to determine whether or not I can use these things. The affidavits at issue in this case, plainly and simply laid out, and we are not conceding that there was a material omission and we are not conceding that there were false statements made in those affidavits. But as the district court said, even if you take all of the information that the plaintiffs claim needs to be included in the affidavit, and even if you strike out all of the information that they claim should be struck from the affidavits, there still exists probable cause of gambling and money laundering. And as long as that exists, there is no Fourth Amendment violation. Your adversary suggests that's a jury question if you went to court. Do you agree with that? We would disagree with that, Your Honor. The question of whether probable cause exists is a legal standard. Is there reason to believe that a crime may have occurred or evidence of a crime may be found at this location? That's a legal question. It's not a jury question. If there were a dispute, for example, between the issuing magistrate and the affiant as far as what was said in a conference and there's no transcript, that might be a jury question. Did Officer Jones say ABC or not? Officer Jones says she did. Magistrate Doe says she didn't. That would be a jury question. But the actual question of does probable cause exist is purely a legal question. And it's based, in this case, on the affidavits filed with the courts? Yes. Yes. And just to conclude very briefly, Your Honors, we would also ask that this court affirm the separate determination that the Assistant Attorney General, who was legal counsel to the Organized Crime Commission, did not commit a Fourth Amendment violation. The evidence in this case was very clear that Mr. Maloon did not review the affidavits before they were filed. He was there to provide logistics, to provide support, but he did not review them. What does that mean, logistics? I mean, it's not a military operation or something. Part of the way an organized crime task force works, Your Honor, is, for example, they need office space, they need equipment, they need those types of things. The Assistant Attorney General assigned to the task force provides that, provides making sure that basically bills are paid, if experts are retained, that they are done, all of those things. So that's what the evidence in this case shows Mr. Maloon's involvement was. He did not review any of the affidavits before they were submitted. I see my time is just about over, so we would ask, Your Honors, that you affirm the district court. All right. Thank you for your argument. Appreciate it. And we'll hear from Mr. Davis-Williams. Thank you, Your Honors. Three quick points. Your Honors, ask the state, why did Lisa Smith and David Hunt go before Judge Taylor as local law enforcement when they were clearly members of this task force? And if, in fact, the state is correct in saying that it is against Ohio law to publicize these, but this is going to the court. There is nothing that prevented the state from presenting this information to the judge under seal, or what is missing from this particular argument is the fact that both Lisa Smith and David Hunt were familiar to Judge Taylor in their local capacities, and they made a point not to inform her until after the hearing that they were not there in their local capacities. They were there as members of the state. But even if they're members of that state task force and local officers, can't they just go before the judge as local officers anyway? They could do that, couldn't they? Sure, Your Honor. The problem, though, comes in, again, back to the injunctions that were preventing the state from seizing these machines. They weren't seizing them as local law enforcement officers. They were seizing them as a part of this state task force. And that's the reason. The question is, it begs the question of, if there was no reason to separate themselves from local law enforcement from this task force, then why go through all of the effort to separate themselves before the court? And the simple answer to that is this task force and the members of the task force were fully aware that if they went before a judge and asked for a search warrant as the state, that they would not be allowed to have those search warrants because the state had been enjoined from seizing those machines. Your Honors mentioned a moment ago that there was additional money laundering and gambling. There had been no determination that the machines were gambling. Therefore, there could not be money laundering if there was no illegal gambling. And that determination to this date still hasn't been made. So to say that the affidavits included evidence of money laundering necessarily means that the machines were illegal gambling devices, which still hasn't been determined. There was something in the affidavits that said that they had an expert that decided these were gambling machines, or is that not mentioned in there? Yes, Your Honor. Well, that actually is one of the issues because the affidavits mention their experts that say that the machines were, they classify them as slot machines, even though we have testimony from that particular expert that said he did not call them a slot machine because when you hear slot machine, that gives the connotation of one of these one-armed bandits, which that was not the case. And, in fact, this particular expert said he did not classify them as that. But, yes, in the affidavit, they did have experts. But, again, not saying there were, we had experts, the plaintiffs had experts as well, that said that they weren't gambling machines. That wasn't before the courts. I mean, what you had. Right, right. Right, Your Honor. And if I could wrap up very quickly with the one statement, when you asked what happened, the three prosecutors in each of these counties, not only the reason nothing happened, they declined to prosecute the cases because of the lack of evidence. They did not feel there was enough evidence to bring cases. So these individuals were put out of business, but they were never arrested. They were never charged. There was nothing that came out of this other than the fact that they lost their livelihood. All right. Thank you. Thank you for your argument. The case will be submitted. Clerk may call the next case.